UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALPHONSO SYVILLE,

                                    Plaintiff,

                -against-

CITY OF NEW YORK, et al.,

                                    Defendants.

22-CV-8009 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, filed this action invoking the Court's federal question jurisdiction and alleging that Defendants violated his federally protected rights in the shelter system. Because Plaintiff's complaint contained no facts from which the Court could discern the claims he was attempting to bring against the defendants, on May 1, 2023, the Court directed Plaintiff to amend his complaint within 60 days, to address the deficiencies in his pleadings. Plaintiff filed an amended complaint on June 15, 2023. For the reasons set forth below, the Court dismisses this action.

## BACKGROUND

      In the original complaint, Plaintiff named as defendants (1) the City of New York, (2) Paul Hargrow, an employee of the New York City Department of Homeless Services ("DHS"), and (3) Smila Kodali, an employee of the New York City Health + Hospitals Corporation at "Elmhurst Medical Department" in Upper Manhattan. (ECF 2, at 3.) He asserted that the defendants discriminated, harassed, and retaliated against him in violation of multiple federal statutes, including 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the "Human Rights Act," the Fair Housing Act ("FHA"), and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (*Id.*) Plaintiff asserted that his claims arose from events

occurring inside DHS's shelters and hotels during the Covid-19 pandemic, from March 2020 to May 2021, and referred the Court to nonexistent documents. In the May 1, 2023 order, the Court directed Plaintiff to submit an amended complaint with a short and plain statement of the relevant facts from which his claims arose.

In the amended complaint, Plaintiff again names the City of New York, Hargrow, and Kodali as defendants, but he now adds Ms. Estrada, identified as a supervisor at the Help Meyer Men's Shelter on Ward's Island ("Help Meyer shelter"), as a new defendant. The amended complaint is a 90-page document consisting of the court's amended complaint form interspersed with Plaintiff's statement of claim, multiple letters with additional facts concerning his claims, and various documents relating to Plaintiff's housing at shelters and his alleged disabilities. Plaintiff asserts that Defendants have discriminated, harassed, and retaliated against him while he was in the shelter system in violation of the ADA, the Rehabilitation Act of 1973, the FHA, HIPAA, the "Human Rights Act," and the "COVID-19 Act." (ECF 6, at 2.)[1]

The following information is taken from the amended complaint and attachments. From 2010 to 2021, Plaintiff has been a resident of various homeless shelters in New York City and during that time, he has become physically disabled with damage to his lower back, and in 2017, he was diagnosed with mental illness, anxiety and major depression, which he attributes to the shelter system. (*Id*. at 6.) Beginning in March 2020, primarily at the Help Meyer shelter, staff members deprived Plaintiff of his rights largely in retaliation for his advocacy concerning shelter conditions.

---

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original, unless noted otherwise.

In April 2020, Defendant Kodali "refused [Plaintiff] services" by asking him during a psychological evaluation inside the Elmhurst Hospital clinic in the Help Meyer shelter, "[W]hy are you in the shelter?" and "Who your mother and father?" (*Id*. at 5, 10.) Plaintiff interpreted the comments as Defendant Kodali implying that his parents should be helping him in securing an apartment, and he found them "insulting" and "unprofessional." (*Id*.) He tried to continue with the evaluation, but he felt "uncomfortable," had a panic attack, and walked out. (*Id*. at 10.)) Plaintiff was "off [his] medication" at the time, and it took him another six months after this incident to get his medication from another doctor. (*Id*.)

Plaintiff reported the incident with Defendant Kodali to DHS and Defendant Hargrow, and requested a transfer from the shelter because of his medical conditions and the Covid-19 virus. Defendant Hargrow, however, stated that, Plaintiff "didn't have anything wrong with [him] and that [he] will be alright inside the shelters at the height of the covid pandemic." (*Id*. at 10.) Plaintiff asserts that this "made them refuse to move [him] for his safety during the height of the Covid-19 pandemic," while 20,000 men with similar disabilities as his were placed in hotel rooms. (*Id*. at 5, 11.) He believes that because Defendant Hargrow "didn't say the truth," he remained at the Help Meyer shelter, where he had to "endure a lot of retaliation from the staff" and attempt to avoid the virus. (*Id*. at 6.)

In May 2020, Plaintiff settled a lawsuit he had filed in this court in 2019, *Syville v. City of New York*, No. 19-CV-9988 (S.D.N.Y. June 10, 2020) ("*Syville I*"), in which he had asserted disability discrimination and assault claims against the City of New York and a DHS officer.[2]

---

[2] On June 10, 2020, Judge Valerie Caproni dismissed *Syville I* with prejudice following notification by the parties that a settlement agreement had been reached. *See Syville I*, No. 19-CV-9988, ECF 30 (S.D.N.Y. June 10, 2020). Plaintiff had executed a General Release with the City of New York that barred him from bringing civil rights claims that arose before June 17,

The next month, June 2020, he filed another action in this court against the City of New York and several of its employees, including Kodali and Hargrow, alleging discrimination in the provision of shelter services and retaliation against him for the filing of *Syville I* and his advocacy for the homeless.[3] *See Syville v. City of New York*, No. 20-CV-4633 (PGG), 2022 WL 16541162 (S.D.N.Y. Oct. 28, 2022) ("*Syville II*").

Plaintiff alleges in this action that from May 2020 to January 2021, he was subjected to multiple acts of retaliation for filing the two complaints and his advocacy on homeless shelters, which included submitting a petition with 25 other shelter residents to the director of the Help Meyer shelter. The alleged retaliatory conduct included (1) not moving him to a hotel room in May 2020; (2) unspecified retaliatory acts from Pernell, a food server whom he sued in *Syville II*; (3) his case manager's refusal to make him copies of his complaints and other documents although all libraries were closed because of Covid-19; (4) not getting his medications after the incident with Defendant Kodali because he was "scared to death [about] reaching out to Ms. Mack for help" (*id*. at 12); and (5) shelter staff "messing with his mail," not giving it to him in a timely manner, or returning it to the sender (*id*. at 8, 12).

---

2020, against the City or its employees. *Id*., ECF 32-33. On April 6, 2023, Plaintiff filed a motion to reopen the case, *see id*., ECF 38, which is still pending.

[3] In *Syville II*, Plaintiff asserted that, beginning in March 2020, staff members forced him out of the Help Meyer shelter against his will, falsified statements, refused him medication, kept him in dangerous and unsanitary living conditions, denied him services, held his mail, refused him food, and failed to follow precautions to prevent the spread of the Covid-19 virus. *See Syville II*, No. 20-CV-4633, ECF 2, at 5. Plaintiff also alleged a wide ranging conspiracy to retaliate against him for his advocacy for safety measures, which included the continued violation of his rights by staff members at multiple shelters and Hargrow's rejection of his request for a transfer to a hotel room. On October 28, 2022, Judge Paul G. Gardephe adopted Magistrate Judge James L. Cott's Report and Recommendation, which recommended that the defendants' motion to dismiss be converted to one for summary judgement and that the defendants' summary judgment motion be granted. *See Syville II*, 2022 WL 16541162, at *1, *adopting report and recommendation*, 2022 WL 1549795, at *4 (May 17, 2022).

Plaintiff alleges that he was subjected to other deprivations at the Help Meyer shelter. In November 2020, he was denied medical treatment by two different doctors at the shelter clinic, and by December 2020, he found himself surrounded by residents at the Help Meyer shelter who were not concerned about the Covid-19 virus, including "[s]ex offenders, [u]ndocumented [m]igrants, drug users and [a]lcoholic[s]." (*Id*. at 14.) Plaintiff hoped that he did not contract the virus and "immediately beg[a]n to advocate to the director about the environment they [were] keeping [him] in as a form or retaliation against him." (*Id*.) On January 1, 2021, Plaintiff was transferred to a hotel in Queens, New York.

On the day of the transfer, Defendant Estrada got mad at Plaintiff after he refused to take the MTA to the hotel because "they [were] supposed to send [him] transportation for [him] and [his] property to and from the hotel." (*Id*. at 15.) She asked him to wait in the cold and called the police when he refused. After the police arrived, Plaintiff was allowed to wait in his room at the shelter for his transportation. When Plaintiff arrived at the hotel, he learned that Defendant Estrada, who worked at the hotel at night, had "put [his] life at risk" by placing him in a hotel room with a roommate, where the beds were only three feet apart instead of the recommended six feet apart to prevent the spread of Covid. *(Id*. at 8.) Plaintiff asserts that this was "traumatiz[ing]." (*Id*. at 16.)

In February 2021, Plaintiff obtained a single occupancy hotel room where he "felt safe from the covid and retaliation [he had] been experiencing." (*Id*. at 17.) In April 2021, however, the staff at BronxWorks' Jerome Avenue Men's Shelter ("JAMS"), where Plaintiff had been staying, threw all of his clothes away because he had written them up for throwing away his "psych meds" a few weeks before. (*Id*.) Plaintiff had started to receive unemployment benefits and was able to purchase new clothes.

On August 3, 2021, after eleven years in the shelter system, the Coalition for the

Homeless assisted Plaintiff in obtaining his own apartment:

> It took coalition for the Homeless 1 year to do what DHS wouldn't do in 10 years.
> To teach me a lesson about advocating against DHS, they retaliation against me
> was not to give me housing. The [f]ederal [l]awsuit which DHS didn't respect and
> retaliated against me every opportunity they got.

(*Id*.) He seeks five million dollars in damages.

## DISCUSSION

### A.     Claim Preclusion

Plaintiff raises claims regarding allegedly unlawful conditions at homeless shelters in

New York City, including his mistreatment as a mentally ill resident, the inadequate response to

the Covid-19 virus, and what he perceived as a campaign of retaliation against him for his

advocacy against DHS and his filing of lawsuits in this court. Most of Plaintiff's claims,

however, concern his residency at the Help Meyer shelter and were previously raised in *Syville*

*II*. He sued in that action the City of New York, Hargrow, Kodali, and four staff members of the

Help Meyer shelter (Johnson, Robinson, Brown, and Pernal). Robinson was terminated from the

case at Plaintiff's request, *see id.*, ECF 10-11, and Johnson, Brown, and Pernal were later

dismissed pursuant to a joint stipulation, *see id.*, ECF 39, 41-42. On October 28, 2022, Judge

Paul G. Gardephe adopted Magistrate Judge James L. Cott's Report and Recommendation,

which recommended that the motion to dismiss by the remaining defendants – the City of New

York, Hargrow, and Kodali − be converted to one for summary judgment and that the defendants'

summary judgment motion be granted. *See Syville II*, 2022 WL 16541162, at *1, *adopting report*

*and recommendation*, 2022 WL 1549795, at *4. Judge Cott had found that the settlement

agreement in *Syville I* barred Plaintiff from bringing civil rights claims that arose before June 17,

2020, against the City or its employees. *Id.*, 2022 WL 1549795, at *6. Judge Cott determined that

Plaintiff's claims in *Syville II* were premised on conduct that occurred prior to June 17, 2020, and were therefore covered by the settlement agreement. *Id*. Judge Gardephe agreed with Judge Cott, finding that the General Release was enforceable in *Syville II*, and granted the defendants' motion for summary judgment on that basis. *Syville II*, 2022 WL 16541162, at *7-8.

Plaintiff reiterates in this action the following claims from *Syville II*: (1) in April 2020, Kodali made comments about his parents which caused him anxiety and effectively denied him mental health services and medications; (2) Hargrow and DHS denied his transfer request to a hotel room during the Covid-19 pandemic; (3) he was subjected to violations in the shelter system, including retaliatory acts for his advocacy and filings of lawsuits. Plaintiff's claims arising out of the same conduct previously litigated in *Syville II* are barred under the doctrine of claim preclusion.[4]

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims or defenses that were or could have been raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent

---

[4] Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise the issue. *See, e.g.*, *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's dismissal on grounds of issue preclusion even though defendant failed to plead that defense, and noting that "principles of preclusion involve" not only "the rights and interests of the parties," but also "important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions").

jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted).

To determine whether a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees*, 140 S. Ct. at 1595). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

Here, all of the requirements for claim preclusion are satisfied with respect to Plaintiff's claims against Hargrow and Kodali and some of his claims against the City of New York. First, Plaintiff filed an earlier action that was adjudicated on the merits; second, the action involved the same parties, Hargrow, Kodali, and the City of New York; third, the prior court was of competent jurisdiction; and fourth, the claims asserted in this action were, or could have been, raised in the prior action. *See In re Motors Liquidation Co.*, 943 F.3d at 130. The Court therefore finds that all claims against Hargrow and Kodali, and claims asserted against the City of New York that arose before June 17, 2020, are barred under the doctrine of claim preclusion and must be dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000) (holding that dismissal for failure to state a claim is appropriate where "it is clear from the face of the complaint, and matters of

8

which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law"
by claim preclusion).

**B.      Claims under 42 U.S.C. § 1983**

Plaintiff's remaining claims are against Defendant Estrada and the City of New York and
concern alleged violations of his rights at shelters after June 17, 2020, the date of the general
release discussed in *Syville II*. He alleges the following: (1) the denial of medical care at the Help
Meyer shelter clinic; (2) the failure of residents and staff to follow Covid precautions;
(4) housing him with undesirable residents, some of whom were sex offenders and substance
abusers; (5) his case manager refusing to make copies of his legal papers and other documents;
(6) not receiving his mail in a timely manner; (7) Defendant Estrada attempting to make him wait
in the cold for transportation; (8) Defendant Estrada placing him in a hotel room without the
recommended six feet distance between him and his roommate; and (9) staff at JAMS throwing
his medications and clothes away. Plaintiff attributes all these actions to retaliation for his
continued advocacy on shelter conditions.

Because Plaintiff indicates that DHS and the City of New York are responsible for the
shelters, and he characterizes his claims as constitutional and statutory violations, the remaining
claims can be construed as ones asserted under 42 U.S.C. § 1983. Section 1983 provides redress
for a deprivation of federally protected rights by persons acting under color of state law. 42
U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under
Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of
the United States was violated, and (2) the right was violated by a person acting under the color
of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

1.      **Claims against Defendant Estrada**

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

The activity of a private entity can be attributed to the state in three situations: (1) the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the "public function" test). *See Fabricant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In analyzing whether a private entity acts under color of state law for purposes of Section 1983, the district court begins "by identifying the specific conduct of which the plaintiff complains," rather than the general characteristics of the entity. *Id.* Providing housing is not a public function because it is not the exclusive province of the state. *See, e.g.*, *George v. Pathways to Hous., Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.'"). The fact that an entity receives public funds does not turn private action into state action. *See Rendell-Baker*, 457 U.S. at 840; *see also Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995 (KAM), 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020) ("[T]he provision of

homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." (citation and internal quotation marks omitted)).

Here, Plaintiff brings claims against Defendant Estrada, whom he identifies as a supervisor at the Help Meyer shelter, which is operated by a private entity, not the DHS. *See Syville II*, No. 22-CV-4633 (PGG), 2020 WL 4750650, at *2 (S.D.N.Y. Aug. 17, 2020) (indicating that Help USA, a private social services organization, is the operator of the Help Meyer shelter). Defendant Estrada's actions cannot be considered attributable to DHS or the City of New York, because she is a private actor. Her employment by an organization that operates a homeless shelter or receives funds from the City of New York is not sufficient to turn her private conduct into state action. Plaintiff therefore fails to state a Section 1983 claim against Defendant Estrada. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Claim against the City of New York

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's

constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff sues the City of New York, but he alleges no facts suggesting that the City of New York itself has a policy, practice, or custom that resulted in a violation of his constitutional rights. Instead, the complaint outlines his personal experience navigating the shelter system and what he believes were violations committed by the shelter staff. Plaintiff therefore fails to state a Section 1983 claim against the City of New York. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.   First Amendment retaliation

To state a First Amendment retaliation claim, a private citizen must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("Regardless of the factual context, [courts] have required a plaintiff alleging retaliation to establish speech protected by the First Amendment."). The plaintiff must also show, as with other Section 1983 claims, that the defendants' actions were taken under color of state law. *See Sykes*, 723 F.3d at 406 (internal citation omitted); *see also Ciambriello*, 292 F.3d at 323.

Because Plaintiff fails to identify any state-actor defendants who allegedly retaliated against him, even if the Court assumes that he is entitled to First Amendment protection for his advocacy on issues relating to conditions at the shelter, that the alleged retaliatory actions were caused by his exercise of his rights, and that his exercise of his First Amendment rights was effectively chilled, his complaint does not state a claim that his constitutional rights were

violated. Plaintiff does not identify a state actor responsible for the allegedly retaliatory conduct of the staff at the Help Meyer shelter and other shelters. Instead, he brings claims only against Defendant Estrada, who as explained above, cannot be considered a state actor under Section 1983. Plaintiff's First Amendment retaliation claims must therefore be dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

  **4.  Shelter conditions**

  Any Section 1983 claims Plaintiff is asserting based on shelter conditions must be dismissed because there is no federal constitutional right to housing or accommodations in a shelter system. In *Lindsey v. Normet*, the Supreme Court held that there is no "constitutional guarantee of access to dwellings of a particular quality." 405 U.S. 56, 74 (1972). Furthermore, the government has no "obligation to provide adequate housing." *Richardson v. City of New York*, No. 12-CV-2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y Apr. 17, 2012) (internal quotation marks and citation omitted). Plaintiff's allegations about undesirable shelter conditions do not state a federal claim because there is no due process property right to placement in a particular type of shelter under federal law or New York law. *See Lindsey*, 405 U.S. at 74 ("We are unable to perceive in [the Constitution] any constitutional guarantee of access to dwellings of a particular quality . . . [a]bsent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationships are legislative, not judicial, functions"); *Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y 2009) ("The Plaintiff has no claim for deprivation of property without due process because he does not have a property right to placement in a particular type of shelter under New York law."). The Court therefore dismisses Plaintiff's Section 1983 claims arising from his shelter conditions for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

C.      **Claims of Discrimination and Retaliation Based on Disabilities**

Plaintiff, who alleges that he suffers from mental and physical disabilities, asserts that

Defendants discriminated and retaliated against him in violation of the Americans with

Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and the Fair Housing Act ("FHA").

1.      **Claims under Title III of the ADA and the Rehabilitation Act**

Plaintiff alleges that Defendants discriminated and retaliated against him in the provision

of shelter services in violation of the ADA and the Rehabilitation Act. Title III of the ADA

governs places of public accommodations, and guarantees that "[n]o individual shall be

discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation."[5] 42 U.S.C. § 12182(a).

Under the Rehabilitation Act, "no otherwise qualified individual with a disability in the

United States . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). There is no individual

liability under the Rehabilitation Act. *See, e.g.*, *Davis v. Power of Auth.*, No. 19-CV-0792

(KMK), 2022 WL 309200, at \*20 (S.D.N.Y. Feb. 2, 2022). Because the standards under the ADA

and the Rehabilitation Act "are generally the same and the subtle distinctions between the

statutes are not implicated in this case, '[the Court will] treat claims under the two statutes

---

[5] Although private shelters qualify as public accommodations under Title III, s*ee* 42 U.S.C. § 12181(7)(K) (including homeless shelters and "other social service center establishment[s]" as public accommodations), the money damages Plaintiff seeks are not available under Title III, *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004), *op. corrected*, 511 F.3d 238 (2d Cir. 2004).

identically'" for the purposes of this order.[6] *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

To state a disability discrimination claim under the ADA and the Rehabilitation Act, a plaintiff must allege: (1) that he is disabled within the meaning of the statute; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the statute. *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). A plaintiff must also allege that the "exclusion or discrimination was due to [the plaintiff's] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). To state a claim for retaliation under these statutes, a plaintiff must allege that (1) he was engaged in an activity protected under the statutes, (2) the defendants were aware of this activity, (3) the defendants took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. *See* 42 U.S.C. § 12203 (prohibiting retaliation against an individual who has "participated in any manner in an investigation, proceeding, or hearing" under the ADA); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (defining "protected activity" as "action taken to protest or oppose statutorily prohibited discrimination").

Even if the Court assumes that Plaintiff is disabled within the meaning of the ADA and Rehabilitation Act, his assertions do not suggest that any defendant was motivated by, or acted pursuant to, discriminatory or retaliatory animus based on his disability, or that he requested and

---

[6] Plaintiff does not allege that the shelters receive federal funding, as would be required to state a claim under the Rehabilitation Act. *See* 29 U.S.C. § 794(a); *Rothschild v. Grottenthaler*, 907 F.2d 286, 289-90 (2d Cir. 1990). The Court will, however, assume for purposes of this decision that the Rehabilitation Act applies to the shelters.

was denied a reasonable accommodation.[7] Plaintiff asserts that he was housed in the Help Meyer

shelter and other facilities within the shelter system, where: (1) he was denied medical care;

(2) staff and residents failed to follow protocols to reduce the spread of Covid-19; (3) he was

housed with undesirable residents; (4) his case manager refused to make copies of his papers; (5)

his mail was mishandled; (6) his medication and clothes were thrown away; and (7) Defendant

Estrada attempted to make him wait in the cold for transportation and placed him in a hotel room

with less than six feet between him and a roommate. While these assertions suggest that Plaintiff

faced unfortunate conditions in the shelter system, he does not allege facts suggesting that he was

deprived of access to services offered to other residents *because of* his disability or perceived

disability. For these reasons, Plaintiff's claims under the ADA and the Rehabilitation Act are

dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B)(ii).

### 2.    Claims under the FHA

The FHA, 42 U.S.C. § 3601, *et seq*., "broadly prohibits discrimination in housing."

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). To state a claim under the FHA,

a plaintiff must plausibly allege that: (1) he was a member of a class protected by the FHA, and

(2) he suffered an adverse housing action because of his membership in that protected class. *See*

---

[7] Generally, the proper defendant in a claim under Title III of the ADA is the entity, not an individual employee. As to individual liability under Title III of the ADA, it has been held that "[t]he question of whether a person is a proper defendant . . . turns . . . on . . . whether the [individual] defendant owns, leases, or operates a place of public accommodation within the meaning of the ADA." *Doe v. NYSARC Trust Serv., Inc.*, No. 20-CV-0801, 2020 WL 5757478, at *5 (N.D.N.Y. Sept. 28, 2020) (internal quotation marks and citation omitted), *report & recommendation adopted*, 2020 WL 7040982 (N.D.N.Y. Dec. 1, 2020). With respect to his disability based claims under Title III, Plaintiff only names Defendant Estrada, who is not alleged to be the owner or operator of the shelter.

Nor does Plaintiff name any entity as a defendant that can be held liable under the Rehabilitation Act.

*Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913 (LBS), 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012).

Here, Plaintiff asserts that Defendants subjected him to discrimination in housing based on his disabilities, but he does not allege any facts suggesting a violation of the FHA. Although he repeatedly asserts that he complained about the general conditions of the shelters, none of his allegations suggests that his complaints involved discrimination based on a disability. *See, e.g.*, *Williams v. New York City Hous. Auth.*, No. 07-CV-7587 (RJS), 2009 WL 804137, at *8 (S.D.N.Y. Mar. 26, 2009) (complaints of general conditions at housing complex are not "protected activities" under the FHA). Because Plaintiff does not allege any facts plausibly suggesting that any defendants subjected him to discrimination or retaliation in housing on the basis of any impermissible factor, he fails to state a claim under the FHA. The Court therefore dismisses Plaintiff's claims under the FHA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## D.    HIPAA Claims

Plaintiff alleges that Defendants violated his rights under "HIPPA," which the Court understands to be a reference to the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The Court must dismiss Plaintiff's claims under HIPAA because HIPAA does not provide a private right of action. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020). The Court therefore dismisses Plaintiff's claims under HIPAA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## E.    Claims under State Law

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and

only state-law claims remain, the federal court should decline the exercise of jurisdiction."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal

claims over which the Court has original jurisdiction, the Court declines to exercise its

supplemental jurisdiction over any state-law claims Plaintiff may be asserting.[8] *See Kolari v.*

*New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367

'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances

in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of*

*Surgeons*, 522 U.S. 156, 173 (1997)).

## CONCLUSION

The Court dismisses this action for failure to state a claim on which relief may be

granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). All other pending matters in this case are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant

demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to enter judgment in this action.

SO ORDERED.

Dated:   November 29, 2023
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

---

[8] By invoking the "Human Rights Act" and the "Covid-19 Act" (ECF 6, at 2), Plaintiff
may be attempting to assert claims under the New York State and City Human Rights Laws and
other state laws.